**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-1541**

———————

EDWARD GELIN; DEBORAH GELIN, as personal representatives of the Estate of Ashleigh Gelin, and for themselves,

Plaintiffs − Appellees,

v.

BALTIMORE COUNTY, MARYLAND; MICHAEL SALISBURY, II, individually and in his official capacity; MICHELLE RAWLINS, individually and in her official capacity; NICHOLAS QUISGUARD, individually and in his official capacity; MYESHA WHITE, individually and in her official capacity; JOSEPH LUX, individually and his official capacity; GREGORY LIGHTNER, individually and in his official capacity; CARL LUCKETT, individually and in his official capacity; DEBORAH J. RICHARDSON, Director of Baltimore County Detention Center, individually and as an agent/employee of Baltimore County,

Defendants – Appellants,

and

JOHN AND JANE DOES, 1-8,

Defendants.

———————

Appeal from the United States District Court for the District of Maryland, at Baltimore. A. David Copperthite, Magistrate Judge. (1:16−cv−03694−ADC)

———————

Argued: September 25, 2024                    Decided: December 4, 2024

———————

Before DIAZ, Chief Judge, and NIEMEYER and QUATTLEBAUM, Circuit Judges.

Held in abeyance by published order.  Chief Judge Diaz directed entry of the order with the concurrence of Judge Niemeyer and Judge Quattlebaum.

---

**ARGUED:**  Bradley J. Neitzel, BALTIMORE COUNTY OFFICE OF LAW, Towson, Maryland, for Appellants.  Michael Alan Wein, LAW OFFICES OF MICHAEL A. WEIN, L.L.C., Greenbelt, Maryland, for Appellees.  **ON BRIEF:**  James R. Benjamin, Jr., Baltimore County Attorney, BALTIMORE COUNTY OFFICE OF LAW, Towson, Maryland, for Appellants.

---

ORDER

---

DIAZ, Chief Judge:

Ashleigh Gelin died by her own hand in November 2013 within days of her incarceration at Baltimore County Detention Center.  Ashleigh's parents sued on behalf of themselves and Ashleigh's estate, alleging claims under 42 U.S.C. § 1983, the Maryland Declaration of Rights, and Maryland common law against Baltimore County medical and correctional personnel (and their employers).  Years of litigation followed.  *Gelin v. Shuman*, 834 F. App'x 41 (4th Cir. 2021); *Gelin v. Shuman* (*Gelin II*), 35 F.4th 212 (4th Cir. 2022).

The Gelins' case reaches us on the parties' third interlocutory appeal.  In the district court, Baltimore County and seven correctional officers moved for judgment on the pleadings.[1]  The district court granted the County's motion in part and denied it in part.

---

[1] Baltimore County and the officers have shared counsel throughout this case. Because they make their arguments as one, just as they did to the district court, we refer to them collectively as "the County."

*Gelin v. Baltimore County* (*Gelin (Rule 12(c))*), 2023 WL 2480502, at \*10 (D. Md. Mar. 13, 2023).

The County asked the district court to reconsider its denial, and the court entered an order addressing most—but crucially, not all—the issues that the County raised. *Gelin v. Baltimore County* (*Gelin (Reconsideration)*), 2023 WL 3565081, at \*1 (D. Md. Apr. 13, 2023). Before the district court could rule on the remaining issue, the County appealed.

On appeal, the County and the officers ask us to reverse the district court's partial denial of judgment against it. But we can't reach the merits unless we find the County's appeal proper. The Gelins argue that it isn't: They say that the County's notice of appeal violated Rules 3 and 4 of the Federal Rules of Appellate Procedure. We agree. The County's appeal is premature because the order that the County appeals left a portion of the underlying motion unadjudicated. Fed. R. App. P. 4(a)(4)(B)(i).

The district court has jurisdiction to rule on the remaining issue, and it should do so. But because the County's notice of appeal hasn't yet "become[] effective," *id.*, we're stuck in limbo, and this appeal remains "suspended—dormant—unripe." *Florian v. Sequa Corp.*, 294 F.3d 828, 829 (7th Cir. 2002) (per curiam). The parties should inform us when that changes, and then we will proceed. For now, we hold the appeal in abeyance.

## I.

The facts pleaded in the Gelins' complaint are tragic. Ashleigh Gelin began a one-year sentence of incarceration at Baltimore County Detention Center on November 4, 2013. Ten days later, a correctional officer found Ashleigh "slumped down on her toilet, her neck

3

hanging sideways with a sheet tied around her neck and tied to the vent in the ceiling." EMTs tried to revive her, but Ashleigh died before arriving at a hospital.

Ashleigh's parents, Edward and Deborah Gelin, sued over Ashleigh's death. Among the named defendants were Baltimore County and a group of correctional officers who were on duty the night that Ashleigh took her life. The Gelins claimed that the officers had shown deliberate indifference toward Ashleigh in violation of 42 U.S.C. § 1983, and that both the officers and the County were liable in tort under Maryland common law.

The parties spent years litigating issues not before us. *See Gelin II*, 35 F.4th at 215–17. The relevant procedural history began in June 2022, when the County moved for judgment on the pleadings on all claims against it.

The district court ruled that the complaint didn't properly allege that the correctional officers were deliberately indifferent to Ashleigh Gelin's mental health needs, but that it did plausibly plead that the officers disregarded Ashleigh's physical safety. *Gelin (Rule 12(c))*, 2023 WL 2480502, at *5. The district court held that the Gelins pleaded violations of the Eighth Amendment under 42 U.S.C. § 1983, and that the same facts stated a claim for common-law gross negligence. *Id.* at *9.

The district court then considered three distinct immunity doctrines and refused to apply them. It decided that the officers had violated "a clearly established Eighth Amendment right"—"[e]xhibiting deliberate indifference to an inmate's safety"—so they couldn't assert qualified immunity. *Id.* at *6. It also found that the officers couldn't assert Maryland common-law public official immunity because that doctrine didn't apply to gross negligence claims. *Id.* at *9. And it denied Baltimore County Maryland common-law

4

governmental immunity because the County hadn't carried its burden to explain how that immunity applied. *Id.* at *10.

Twenty-eight days after this adverse ruling, the County asked the district court to change its mind. The County's motion invoked Federal Rule of Civil Procedure 52(b) and styled itself a motion to amend findings of fact and conclusions of law. It asked the district court to "amend its finding[s]" and "enter judgment in favor of Defendants on all claims." Defs.' Mem. of Law at 18, *Gelin v. Baltimore County*, No. 1:16-cv-3694 (D. Md. Apr. 10, 2023), ECF No. 158-1.

The County's motion was improperly brought. District courts only make findings of fact and conclusions of law in "an action tried on the facts without a jury"—in other words, after a bench trial. Fed. R. Civ. P. 52(a)(1). And of course, the district court hadn't held a bench trial, so there were neither findings nor conclusions to amend. The district court instead construed the County's motion as requesting reconsideration of an interlocutory order under Civil Rule 54(b). *Gelin (Reconsideration)*, 2023 WL 3565081, at *1.

The district court reaffirmed its previous findings. *Id.* at *2. But it found that the County made one good point. The Gelins had pleaded a count of common-law negligence, and the court had "failed to determine" whether the correctional officers could assert public official immunity from that claim. *Id.*

The district court ordered the Gelins "to respond to [the County's] argument that the [Gelins'] negligence claims are barred by public official immunity." *Id.* The Gelins

complied.  But before the court could rule on the pending issue, the County noticed this appeal.

In their briefs, the Gelins highlight that the district court had only ruled on part of the County's motion when the County filed its notice of appeal.  For that reason, they argue that the County's appeal violates Rules 3 and 4 of the Federal Rules of Appellate Procedure and ought to be dismissed.

We requested supplemental briefing on this issue of appellate procedure, and we now take it up.[2]

## II.

### A.

Rules 3 and 4 of the Federal Rules of Appellate Procedure govern when and how a notice of appeal is filed.  Generally, a notice must be filed "within 30 days after entry of the judgment or order appealed from."  Fed. R. App. P. 4(a)(1)(A).  But there are exceptions.  If a party timely moves for certain forms of relief—for instance, "to amend or make additional factual findings," *see* Fed. R. Civ. P. 52(b), or "to alter or amend the

---

[2] The Gelins also argue that the collateral order doctrine doesn't permit us to exercise jurisdiction over the appeal.  We must assure ourselves of subject-matter jurisdiction before turning to the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  But we don't need to confirm subject-matter jurisdiction to rule on other threshold issues, so we can address Appellate Rules 3 and 4 first. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431–32 (2007); *Trustgard Ins. v. Collins*, 942 F.3d 195, 201 (4th Cir. 2019).  In any event, we have subject-matter jurisdiction, at minimum, to review the district court's denial of qualified immunity at the pleading stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 673–75 (2009).

judgment," *see id.* 59(e)—"the time to file an appeal runs . . . from the entry of the order disposing of the last such remaining motion," Fed. R. App. P. 4(a)(4)(A). When the ensuing notice of appeal names only "an order described in Rule 4(a)(4)(A)," then the "notice of appeal encompasses the final judgment," too. *Id.* 3(c)(5).

Rule 4 also tolerates premature notices of appeal. A notice that's "filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry." *Id.* 4(a)(2). A similar rule applies to notices filed while a motion listed in Appellate Rule 4(a)(4)(A) is pending. In that case, "the notice becomes effective . . . when the order disposing of the last such remaining motion is entered." *Id.* 4(a)(4)(B)(i). The latter rule disarmed a harsh "trap" in the old Appellate Rules "that caused appeals filed before the disposition of a motion for reconsideration to self-destruct" and thus deprived many parties without battle-scarred appellate counsel "any opportunity for review." *Otis v. City of Chicago*, 29 F.3d 1159, 1166 (7th Cir. 1994) (en banc).

## B.

The events in the district court leading up to the filing of this appeal create a curious problem of appellate procedure. The County's notice of appeal designated an order partly denying reconsideration, not the order being reconsidered. Applying Rules 3 and 4, we must decide whether that notice was timely and sufficient to appeal the district court's decision denying judgment on the pleadings.

If the County's "Rule 52(b)" motion falls within Rule 4(a)(4)(A)'s tolling provision and the district court's reconsideration order "dispos[ed] of the last such remaining

7

motion," Fed. R. App. P. 4(a)(4)(B)(i), then the County had 30 days from the entry of the reconsideration order to notice its appeal. If the reconsideration order counts as "an order described in Rule 4(a)(4)(A)," then the notice of appeal, by designating the reconsideration order, sufficed to designate the underlying ruling, too. *Id.* 3(c)(5)(B).

We find that the County's reconsideration motion fits within Rule 4(a)(4)(A). Civil Rule 59(e) requires motions "to alter or amend a judgment" to be filed "no later than 28 days after the entry of the judgment." A judgment, for these purposes, means "any order from which an appeal lies." Fed. R. Civ. P. 54(a). Because the district court's Rule 12(c) decision denied the correctional officers qualified immunity at the pleading stage, it was appealable at least to that extent. *See Behrens v. Pelletier*, 516 U.S. 299, 307 (1996); *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009). It was thus a "judgment" under the Civil Rules. A motion asking the district court to rethink that ruling would have been proper under Civil Rule 59(e), and so it would be eligible for tolling under Appellate Rule 4(a)(4)(A)(iv).[3]

---

[3] The Eleventh Circuit has held that Rule 4(a)(4) "cannot apply" in an interlocutory qualified immunity appeal, since all the motions listed there "are from final judgments," and "there is no final judgment" in an interlocutory appeal. *Pruett v. Choctaw County*, 9 F.3d 96, 97 n.2 (11th Cir. 1993) (per curiam). Respectfully, we disagree. Neither Appellate Rule 4(a)(4)(A) nor the Civil Rules that it cites requires a "final" judgment. The word "judgment," as defined by Civil Rule 54(a), sweeps broadly enough to cover *all* appealable orders, even interlocutory ones. *Rodriguez v. Banco Cent.*, 790 F.2d 172, 176 (1st Cir. 1986); *see* 16A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Catherine T. Struve, Federal Practice & Procedure § 3950.4 n.96 (5th ed. 2019) (criticizing *Pruett*). We hold that Rule 4(a)(4)(A) governs interlocutory appeals.

To be sure, the County styled its motion otherwise, and the district court interpreted it differently still.  But we don't apply Rule 4(a)(4) so woodenly.  It's "the substance of the motion, rather than its form," that controls.  *Slep-Tone Ent. Corp. v. Karaoke Kandy Store, Inc.*, 782 F.3d 712, 717 (6th Cir. 2015) (cleaned up).  We have thus construed a post-judgment "motion for reconsideration" as a "motion to alter or amend a judgment under Rule 59(e)" to bring an appellant within Rule 4(a)(4)(A) and rescue the appeal.  *Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 247 n.4 (4th Cir. 2012).

We choose to do the same here.  The County's "Rule 52(b)" motion asked the district court to change the judgment it had entered.  Because it "call[ed] into question the correctness of a district court judgment," it was "the functional equivalent of a Rule 59(e) motion, and should be treated as such" when we assess compliance with Appellate Rule 4(a)(4).  *Harborside Refrigerated Servs. v. Vogel*, 959 F.2d 368, 372 (2d Cir. 1992); *accord, e.g., Emory v. Sec'y of Navy*, 819 F.2d 291, 293 (D.C. Cir. 1987) (per curiam); *Krivak v. Home Depot U.S.A., Inc.*, 2 F.4th 601, 604 (7th Cir. 2021).[4]

Because the County's motion invoked Rule 4(a)(4), however awkwardly, the County had 30 days to appeal from "the entry of the order disposing of" that motion.  Fed. R. App. P. 4(a)(4)(A).  The district court entered an order on April 13, 2023, when it ruled on the County's motion for reconsideration.  But that order did not "dispos[e] of" the County's motion, since the order left a portion of the motion unaddressed.

---

[4] The County filed its "Rule 52" motion on April 10, 28 days after the March 13 order that it sought to change.  The motion was thus timely under Rule 59(e).

9

The district court ordered the Gelins "to respond to [the County's] argument that [their] negligence claims are barred by public official immunity." *Gelin (Reconsideration)*, 2023 WL 3565081, at \*2. If the relief the County sought in its motion were simply reconsideration, then the district court's order may have been enough to grant total relief. The order, after all, revealed that the court had reconsidered its decision, even though it hadn't yet chosen what to do.

But the County wanted more. Its motion asked the district court to "amend its finding[s] and judgment and enter judgment in favor of Defendants on all claims." Defs.' Mem. of Law at 18, *Gelin v. Baltimore County*, ECF No. 158-1. And the district court never decided whether to enter judgment for the County on the Gelins' negligence claim.

Since the district court neither granted nor denied a portion of the County's requested relief, the order that the district court entered didn't "dispos[e] of" the County's motion. To "dispose of" doesn't mean to just address an issue; it means "[t]o *finish* dealing with" it. *Dispose of*, American Heritage Dictionary (5th ed. 2011) (emphasis added), https://www.ahdictionary.com/word/search.html?q=dispose      [https://perma.cc/M46J-TA5X].

Accordingly, under Rule 4(a)(4)(B)(i), the County's notice of appeal hasn't yet "become[] effective."

## C.

Since the County's notice of appeal isn't yet effective, we cannot proceed. Three conclusions follow.

10

First, we have jurisdiction.  The County filed its notice of appeal "within thirty days" of the order that it tried to bring before us.  28 U.S.C. § 2107(a).  And "[a]n appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal."  Fed. R. App. P. 3(a)(2).[5]  Because the County complied with the time limit that Congress set, we have "adjudicatory authority over the case."  *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 (2017).

Second, the proper course is to stay proceedings.  When Rule 4(a)(4)(B)(i) defects show themselves early on, the proper action may be to dismiss the appeal as premature.  But we think, as our sister circuits do, that when the problem doesn't show its face "until significant judicial and attorney resources have been expended," we have the option "to stay the appeal until the motion is decided."  *Katerinos v. U.S. Dep't of Treasury*, 368 F.3d 733, 738 (7th Cir. 2004) (per curiam) (citing cases); *see also, e.g.*, *Slep-Tone*, 782 F.3d at 717; *Hodge ex rel. Skiff v. Hodge*, 269 F.3d 155, 157 n.4 (2d Cir. 2001).

That's the case here.  The County's notice will "ripen into an effective appeal upon disposition of" its motion, and when that happens, we'll return to the case.  Fed. R. App. P. 4 advisory committee's note to 1993 amendment.

Finally, we need not formally remand this case.  The district court has jurisdiction to resolve the County's motion without any action on our part.  *E.g.*, *Stone v. J & M Secs.,*

---

[5] In any event, "a time limit prescribed only in a court-made rule . . . is not jurisdictional."  *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 19 (2017).  Because Rule 4(a)(4)(B)(i) has no statutory basis, it imposes no limit on our jurisdiction.

11

*LLC*, 55 F.4th 1150, 1152 (8th Cir. 2022); *Fontanillas-Lopez v. Morell Bauzá Cartagena & Dapena, LLC*, 832 F.3d 50, 62 n.10 (1st Cir. 2016).

To be sure, the filing of a notice of appeal typically "transfers adjudicatory authority from the district court to the court of appeals." *Manrique v. United States*, 581 U.S. 116, 120 (2017). But that's a "background principle," not an absolute rule. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023). Where, as here, "the notice of appeal lies dormant" pending some action by the district court, *Stone*, 55 F.4th at 1152 (internal quotation omitted), the district court has the power to act "in aid of the appeal." *Wolfe v. Clarke*, 718 F.3d 277, 281 n.3 (4th Cir. 2013) (quotation omitted).

III.

We have some sympathy for the County's efforts to safeguard its appeal rights. Indeed, we hold that its notice of appeal was timely filed. But when (as happened here) a party files a post-judgment motion that tolls the time to appeal under Rule 4(a)(4) and then notices an appeal, that notice lacks effect until the district court conclusively rules on all issues raised in the pending motion.

Once the district court "dispos[es] of the last . . . remaining [Rule 4(a)(4)(A)] motion," the County's notice of appeal will spring to life. Fed. R. App. P. 4(a)(4)(B)(i). We direct the parties to give us notice of any such ruling by filing it on the appellate docket. Until then, we hold this appeal in abeyance.

*IT IS SO ORDERED.*

12